## THE HOGARTH.

## NEW YORK LIGHTERAGE & TRANSPORTATION CO. v. THE HO-GARTH et al.

## SAME v. HOGAN et al.

(Circuit Court of Appeals, Second Circuit. December 2, 1895.)

SHIPPING—LOADING CARGO FROM LIGHTER—LOSS OF GOODS.

    A ship was loading heavy packages of goods from a lighter by means of a boom projecting over the lighter's rail, no guy being used with the sling. The cases had been piled in tiers next to the lighter's rail, each tier being composed of three layers of cases. There was a space of some 12 to 18 inches between the outside tier and the one next to it. In raising the topmost case of the outside tier, which case was much broader than the one immediately beneath it, the latter was shoved over the rail and lost, by the sinking of the back edge of the upper case into the space between the two tiers as the front edge was raised by the sling. *Held* that, as it was the duty of the lighter's master to place the cases within the reach of the ship's tackle, the lighter was responsible for the manner in which the cases were piled along the rail; that, if a guy was necessary, it was the duty of the lighter's master to notify the stevedore stationed on the deck of the ship of such necessity; and that, if there was any negligence, it was due to the manner of piling the cases, and the ship was not liable for the loss.

Appeals from the District Court of the United States for the Southern District of New York.

These were libels by the New York Lighterage & Transportation Company against the steamship Hogarth (the Liverpool, Brazil & River Plate Navigation Company, claimant), and against Timothy Hogan and others, to recover for the loss of a package of merchandise lost overboard while loading cargo upon the Hogarth from libelant's lighter. The district court dismissed the libels, with costs, and libelant has appealed.

The Hogarth was lying alongside a wharf in Brooklyn. Outside of her, along her starboard side, lay a lighter, the property of the libelant. The port side of the lighter was towards the starboard side of the ship. The cargo on the lighter consisted of heavy machinery in cases, and driving wheels of locomotives. A boom was rigged out from the mast on the ship, and swung about a foot and a half over the ship's side. The sling around the cases was made fast to tackle rigged to the end of the boom. No guy rope was used with the sling. At the winch on board of the ship was one of the ship's company in charge. At the gangway on the ship stood George Crowley, one of the stevedore's men. On the lighter were two of the stevedore's men, Willis and Leary, who had charge of the slinging of the different cases and pieces of machinery, of fastening the tackle from the end of the boom into the sling, of signaling when to start, and of hoisting. On board the lighter was John Olsen in charge. He was in the employ of libelant. It was his duty to bring the cases of pieces of machinery within reach of the ship's tackle. Thereafter the stevedore's men took charge of it. The port tier of cases on the lighter—that is, the tier next the rail of the lighter—was made up of three layers of cases, one on top of the other. There was a short space between the outside tier and the next tier, variously testified to as being about 18 inches. The dimensions of the case in the sling were 7 feet 10 inches by 7 feet 9 inches by 3 feet 6 inches, weighing 2,800 pounds. The dimensions of the case that went overboard were 10 feet 11 inches long, 2 feet 9 inches wide, and 1 foot 4 inches thick, weighing 2,570 pounds.

The following opinion was delivered in the district court by BROWN, District Judge:

"The evidence leaves no doubt that the second case above the deck was forced off from the side of the lighter by the great weight of the case above it, as the latter was being raised to go on board the Hogarth. The latter case, being

broader, much overlapped the case beneath, and, as the side towards the ship was hoisted up, the opposite overlapping side sank down somewhat into the space of 12 to 18 inches between the case beneath and the next inside tier cases, so that the great weight of the rising case pressed heavily against the edge of the case beneath, and forced it outwards; and the battens may also have caught. The narrower box below was above the lighter's rail, and there were no posts to keep it from going overboard as it was pressed outward by the rising box, so that it went down edgeways between the two vessels, probably assisted by some list of the lighter to port. I do not find sufficient evidence to charge either the Hogarth or the stevedore with the responsibility for this loss. Negligence on their part is not shown. The captain of the lighter testifies that he was required to bring the cases within reach of the ship's tackles by use of the lighter's own appliances, and that he did so. The stevedore had rigged the ship's boom so as to project beyond her rail for hoisting up the cases, and it was no doubt the business of the lighterman to bring the cases beneath the boom, or near it. I do not find established any other direction to the lighterman than that. It was no concern of the ship or to the stevedore whether the cases beneath the boom were taken from the top of other boxes, or from the deck of the lighter. The captain of the lighter had full control of that, and he evidently could have done as he chose about it. It was for him to see to it that he deposited the cases for hoisting in such a way as not to crowd off or injure other cases beneath them, which were not yet delivered to the ship, but were still under the lighterman's control and responsibility. A number of other boxes had been previously slung up from on top of this same box without crowding it, probably because the previous boxes did not overlap. There is no proof of negligence in the mode of hoisting, or in the appliances used. As respects guys, the evidence is that it was not usual to make use of them where the boom projected, as this one did, beyond the vessel's rail, and that there was no apparent need of them. If there was any need of them, having reference to the liability of boxes below to be crowded off, that was a matter specially within the province of the lighterman to observe, and to point out to the stevedore's foreman, who was on the ship, and not in a position to observe or know any such peculiar situation. There was no request for guys, or need of them pointed out. There is further evidence, which is not contradicted, that guys would have been of no use to prevent pressure in the raising of cases of so great weight as these. The only neglect shown is in putting a wide, overlapping case above a narrower one, where one side could sink into the space between the two tiers, when it began to rise, so as to catch and crowd out the narrower box beneath, with neither rail nor posts to keep it in place upon the lighter. The deposit of the cases was the lighterman's act, and not that of the stevedore. The stevedore's two men on the lighter were ordinary working men, not exercising any control, and evidently having no authority to control the captain of the lighter, as to whether he should deposit the cases so as to be hauled from the deck, or from the top of other boxes. The lighterman very likely placed these boxes on top of others, instead of upon his deck, so as to prevent any swinging of the boxes against his own rail. Whether that is so or not, I do not find any negligence proved against the defendants, and the libels are therefore dismissed, with disbursements, and one docket fee."

H. W. Goodrich, for appellants.

Edward L. Owen, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Decrees of district court affirmed, on the opinion of the district judge, with interest and costs.